```
 1                        UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
                                         :
 4   UNITED STATES OF AMERICA,           :   15-M-3369
                                         :
 5                                       :
                   v.                    :   500 Pearl Street
 6                                       :   New York, New York
     SENG, et al.,                       :
 7                                       :   September 21, 2015
                        Defendants.      :
 8   ------------------------------------X

 9       TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT/BAIL HEARING
                    BEFORE THE HONORABLE SARAH NETBURN
10                 CHIEF UNITED STATES MAGISTRATE JUDGE

11   APPEARANCES:

12   For the Government:        UNITED STATES ATTORNEY
                                BY: JANIS ECHENBERG, ESQ.
13                                  DANIEL RICHENTHAL, ESQ.
                                ASSISTANT U.S. ATTORNEY
14                              One St. Andrew's Plaza
                                New York, New York 10007
15

16   For the Defendant:         KEVIN TUNG, ESQ.
                                Kevin Kerveng Tung, P.C.
17                              38-21 Main Street
                                Flushing, New York 11354
18

19

20
     Court Transcriber:         SHARI RIEMER, CET-805
21                              TypeWrite Word Processing Service
                                211 N. Milton Road
22                              Saratoga Springs, New York 12866

23

24

25



     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

1   THE CLERK: In the matter of <u>United States v. Ng Lap</u>
2   <u>Seng</u>.
3   Counsel, please state your name for the record.
4   MS. ECHENBERG: Good afternoon, Your Honor. Janis
5   Echenberg for the Government. With me at counsel table is my
6   colleague Dan Richenthal as well as Jason Albert, a special
7   agent from the FBI. Good afternoon.
8   MR. TUNG: On behalf of the defendant, Ng Lap Seng,
9   Kevin Tung, T-U-N-G.
10   THE COURT: Thank you.
11   MR. TUNG: Good morning, Your Honor -- good
12   afternoon, Your Honor.
13   THE COURT: Good afternoon. Can I have the date and
14   time of the defendant's arrest?
15   MS. ECHENBERG: Yes, Your Honor. This defendant was
16   arrested on Saturday September 19th at approximately nine a.m.
17   THE COURT: Thank you. Good afternoon, sir. My name
18   is Judge Netburn.
19   THE DEFENDANT: Good afternoon.
20   THE COURT: The purpose of today's proceeding is to
21   advise you of certain rights --
22   You can remain seated.
23   The purpose of today's proceeding is to advise you
24   of certain rights that you have, inform you of the charges
25   against you, consider whether counsel shall be appointed for

1  you and decide under what conditions if any you shall be
2  released.
3           I'm now going to explain certain constitutional
4  rights that you have.  You have the right to remain silent.
5  You are not required to make any statements.  Even if you have
6  already made statements to the authorities you need not make
7  any further statements.  Any statements that you do make can
8  be used against you.
9           You have the right to be released either
10 conditionally or unconditionally unless I find that there are
11 no conditions that would reasonably assure your presence in
12 court or the safety of the community.
13          You have the right to be represented by an attorney
14 during all court proceedings including this one and during all
15 questioning by the authorities.  If at any point in time you
16 should run out of money you can petition the court for
17 appointed counsel.  I understand for now you have retained
18 counsel.
19          THE COURT: I have before me a complaint.  It charges
20 you with one count of conspiracy to obstruct the function of
21 and to make false statements to United States Customs and
22 Border Protection.
23          Counsel, have you had an opportunity to review the
24 complaint with your client?
25          MR. TUNG: Yes, Your Honor, I did.

1  THE COURT: You've been able to translate it for him
2 or speak with an interpreter to do so?
3  MR. TUNG: I was able to speak Mandarin to him.  I
4 think he understood, yes.
5  THE COURT: And he understands the charges against
6 him?
7  MR. TUNG: Yes, Your Honor.
8  THE COURT: Does he waive the public reading of this
9 complaint?
10  MR. TUNG: Yes.
11  THE COURT: Thank you.  Sir, you have the right to a
12 preliminary hearing at which the Government will have the
13 burden of establishing that there is probable cause to believe
14 that the crime for which you are being charged has been
15 committed and that you are the person who committed it.
16  If you are in custody you have the right to have
17 that preliminary hearing within 14 days.  If you are not in
18 custody you have the right to have that preliminary hearing
19 within 21 days.  A preliminary hearing will not however be
20 held if before the date it is scheduled you are indicted by a
21 grand jury or an information is filed against you by the
22 Government.
23  I will set a date for the preliminary hearing at the
24 conclusion of these proceedings.
25  Is the Government seeking detention in this case?

```
 1              MS. ECHENBERG: Yes, Your Honor, we are.
 2              THE COURT: Counsel, are you prepared to make an bail
 3   application at this time?
 4              MR. TUNG: Yes, Your Honor.
 5              THE COURT: Let me hear from the Government first.
 6              MS. ECHENBERG: Thank you, Your Honor.  This
 7   defendant presents a significant risk of flight.  This
 8   defendant is exceptionally wealthy, I think beyond what we are
 9   even used to seeing in this court.  As the defendant himself
10   has admitted, he has a net worth of approximately $1.8
11   billion.  He makes approximately $25 million per month.
12   Approximately $300 million annually.
13              As our investigation has revealed he's extremely
14   connected internationally as well.
15              THE COURT: Can you speak up, please?
16              MS. ECHENBERG: Yes.
17              THE COURT: Thank you.
18              MS. ECHENBERG: So just in case I can start from the
19   beginning.
20              THE COURT: I heard.
21              MS. ECHENBERG: Okay.
22              THE COURT: I want to make sure everyone in the
23   courtroom can hear as well.
24              THE COURT: Yes.  Some other admissions that he made
25   just in the context of the Pretrial Services Report is that he
```

1  has approximately $1 billion in Chinese real estate and
2  approximately $30 million worth of private airplanes.  So we
3  are seeking detention as Pretrial has recommended.
4         As the complaint lays out in addition to the wealth
5  that he's admitted, he has access to United States currency.
6  He has wired that we know about approximately $20 million in
7  United States currency into the country and the complaint
8  itself deals with $4.5 million in United States currency.
9         The complaint also deals with the use of private
10 planes which he's admitted he has access to and he takes when
11 he comes to the country extremely short trips, a number of
12 days in and out of the country.  So he has the ability to come
13 in and out quite quickly.
14         As I mentioned, he has tremendous international ties
15 without any real ties to the United States.  Those ties
16 include a Chinese, a Portuguese and a Dominican Republic
17 passport, all of which he's admitted to having although the
18 Government currently only has in its possession th Portuguese
19 and the Chinese passport.
20         The Government is also aware of him having family in
21 Canada.  It appears he's admitted to Pretrial that he lived
22 there for a number of years in the 1990s and he's admitted to
23 extensive foreign travel as is laid out --
24         THE DEFENDANT: [Speaking in Mandarin].
25         MS. ECHENBERG: As is laid out in the Pretrial

1 Services Report.
2     This defendant is charged here in a crime that
3 involves the deception of United States authorities.  He also
4 has a record of similar types of activity and deception.
5     As is laid out in the complaint, he was served with
6 a subpoena to appear in a different district, a subpoena to
7 which he did not respond.  In addition, he was connected to a
8 prior investigation involving the illegal wiring of money to
9 the United States to political parties and political
10 candidates in and around 1996.  Shortly after that
11 investigation began and there were congressional inquiries and
12 arrests, he stopped coming to the United States between 1996
13 and 2000.  So we think that is indicative of his unlikeliness
14 to return now that he himself has been charged.  We think he
15 is very likely to use his enormous resources to flee and it
16 would obviously be very difficult to bring him back and he has
17 exhibited a record of not returning when there is even an
18 investigation that is connected to associates of his.
19     In addition, at the time of his arrest he had at
20 least 20 credit cards in his possession.  He had three phones.
21 He had $30,000 in Hong Kong currency on his person and he was
22 wearing an extremely expensive watch that was gold encrusted
23 in diamonds that has been estimated at being worth
24 approximately $200,000.
25     I don't think I need to say more about his

1 incredible wealth and resources but that's just yet another
2 example of what he has access to and why we have such
3 significant concerns that there is not a bail package of any
4 amount of property or currency that would actually hold this
5 individual in the United States.
6 　　　　As, and Your Honor may not be aware, he was arrested
7 on his way to a private plane to leave the country and that is
8 why the arrest occurred at that time to prevent him from
9 leaving and to go forward with our charges. So as Pretrial
10 has suggested and as the Government concurs, the only way to
11 insure his presence in court and proceeding of this case is to
12 detain this individual.
13 　　　　THE COURT: Thank you. Counsel.
14 [Mr. Tung away from microphone.]
15 　　　　MR. TUNG: Yes. Your Honor, people rich that's not a
16 criminal -- being a criminal and, Your Honor, I don't know if
17 you had a chance to read the complaint and the [inaudible] to
18 me that [inaudible] it's a misunderstanding because the people
19 coming back from a different culture. Mr. Seng comes from
20 [inaudible]. He has [inaudible] times but he did [inaudible]
21 otherwise [inaudible] and the allegations here and that he
22 said he false statements. That's the allegations in the
23 complaint. The nature of the false statement is they ask
24 [inaudible], the U.S. Custom officer asked him what do you
25 want to do with your money and I think it answered -- one of

1 the answer, at least [inaudible] I went to -- I'm going to --
2 I was going to casino to gamble. I think the allegation says
3 they couldn't verify this activity he did some gambling. So
4 basically the Government's suspicious at this point in time
5 that the money went nowhere [inaudible] basically that's
6 [inaudible].

7 They also allege at a time when he left the country
8 he didn't fill out the customs form. If you carry out money,
9 more than $10,000 you should fill out a form. So when I look
10 at the complaint really there's nothing essentially say that
11 Mr. Seng here committed a laundering or drug dealer, anything
12 of that nature.

13 So when I look at the complaint, Your Honor, our
14 constitution [inaudible] make a determination when you set
15 your bail that it's in proportion to what the crime alleged,
16 at least alleged in the complaint but if you look at this
17 complaint on its face people carry money in and out without
18 filling out a form maybe in violation of something but this is
19 not really a crime [inaudible] even if the people taking money
20 out of the country without reporting when they have no
21 [inaudible] it is not a crime though. It's a fine, maybe just
22 a monetary fine or [inaudible] nature.

23 So when the United States just tried to [inaudible]
24 this man a very, very rich but I don't think that has any
25 relevance here. When people being rich that doesn't mean that

1 he is a criminal.

2 Now, by citing that this man here has a lot of
3 money, and Your Honor I will also represent to you although I
4 don't know how to translate [inaudible] member of [inaudible]
5 senator or congressman in China. He has been for four terms.
6 Okay. That's [inaudible] 16 years [inaudible] carries
7 [inaudible]. So here's a well known person and someone who is
8 a legitimate person. He owns business hotels in [inaudible].

9 Now, when someone is in that nature [inaudible] rich
10 they would [inaudible] not very serious crime. It's the
11 allegation here in [inaudible] that's a different story. We
12 don't have such a situation here, Your Honor.

13 Now, Your Honor, also talking about the ties to the
14 United States. Mr. Seng does have a $3.8 million apartment
15 located in Manhattan, Second Avenue and that's what he
16 represents to me. So, Your Honor, there's nothing wrong with
17 that [inaudible] I would suggest we will put this one up, the
18 apartment up first. In addition, I would suggest, Your Honor,
19 we have some sort of electronic monitoring device so -- to put
20 on this man. So he won't be able to leave the country. If
21 [inaudible] the Government will know immediately.

22 So during this period of time Mr. Seng can stay in
23 his apartment in New York and if he ever [inaudible] leaves
24 the Government has $3.8 million apartment that can be taken.
25 That would be [inaudible]. So I think [inaudible] sufficient

1 [inaudible].

2 Now, in addition, if Your Honor would think we
3 should put up some cash I don't think we have any problems
4 putting us some reasonable cash which [inaudible] allegations
5 in the complaint.  You cannot just charge people [inaudible]
6 asking for $1 million bail because -- just because this person
7 have tendency to leave the country but I don't even see that
8 as a possibility here.  Mr. Seng, he has made a lot of
9 donations to various not for profit organizations [inaudible]
10 millions of dollars.  So there's no reason for somebody in his
11 status would not try to defend in this case and try to leave
12 this country forever.  I don't think that's the situation
13 here.

14 Your Honor, I don't mind.  You can ask Mr. Seng what
15 his intention is to defend case -- I don't mind even though I
16 know you're not going to ask him to say that.

17 In addition, Your Honor, I just had the chance to
18 talk to my client because -- to prepare for this bail argument
19 and he also told me that he can possibly have his friends, two
20 ambassadors to the United Nations, United Nations of the
21 United States from -- or the other country, the other country.
22 I think they will come in also to sign some of [inaudible]
23 guarantee to insure that his presence in this country.

24 So, Your Honor, we should set a condition instead of
25 an unconditional bail for him to have a chance and where we

1  try to meet whatever terms the court will set and try to make
2  sure that Mr. Seng will come back and I'll assure he will come
3  back to defend what the allegations [inaudible] not much --
4  something is [inaudible] pose a danger to the society.  He
5  just failed to report and maybe here he spent some money.  He
6  didn't understand the cultural backgrounds [inaudible] United
7  States have ruled in other cases [inaudible] defending these
8  cases.  [Inaudible] cultural [inaudible] people do not know
9  when they come into this country if they carry tons of cash
10 that would be a problem [inaudible] but if you read the
11 complaint [inaudible] motions to dismiss, Your Honor, Your
12 Honor.
13          THE COURT: Can I ask you if you have any response to
14 the Government's allegation that a subpoena was issued for his
15 appearance back in the '90s and he failed to appear and then
16 he did not return back to the United States for several years?
17          MR. TUNG: Well, Your Honor, number one, when he
18 received a subpoena, and I don't even think the person here
19 sitting next to me does not even speak English at all and that
20 is not for a criminal case.  That is for a [inaudible] case.
21 [Inaudible] wants him to be [inaudible].  So he was not aware
22 of this but even if after the subpoena was issued according to
23 the allegations here he came to the United States several
24 times after [inaudible].  He was just not aware of this.
25 [Inaudible] he was not even aware of it.  Nobody ever

translated it. Somebody just drop off a paper saying you have to come into the courtroom to testify on such a day and that day was -- and every time he comes he stays very short period of time. So he left. He's probably not even aware of that. That's arguable here. And he came back according to the complaint here several times, 2014 many times -- I'll look at the dates here. Those are the dates after the subpoena was issued [inaudible]. He was in this country at least one, two, three, four, five -- five times in 2014 and four times in 2013. This year in July 2015 he was here. So, Your Honor, I cannot say that he tried to avoid appearing in court and stay out of the country for a few years because of the subpoena. I think he's not aware of ths at all that he had to appear.

        THE COURT: Thank you. Any response?

        MS. ECHENBERG: Just to clarify a few points, Your Honor. With regard to the grand jury subpoena, just so the court is aware, the defendant was personally served with that subpoena. He was in the presence of his associate, principal associate and co-defendant he was fluent in English, Mr. Yin, and the grand subpoena was fully explained to him. Obviously a man of this wealth also has access to counsel should he want to further understand what that's all about.

        I'm sure Your Honor can do this math but $3.8 million apartment is less than one percent of this defendant's total wealth. So it's clearly not even close to sufficient to

1  being something that would hold this individual here.
2         Also, if the court wants, we can provide the court
3  with numerous examples of individuals who've been on
4  electronic monitoring but have yet still managed to flee.
5         MR. TUNG: Your Honor --
6         THE COURT: Sure.
7         MR. TUNG: My client just informed me that for that
8  subpoena he had a lawyer at that time sent a letter to
9  whatever the lawyer thinks appropriate to explain the
10 situation that he [inaudible]. I don't know the exact details
11 so all I'm trying to say here is he's not irresponsible for
12 the court proceedings that he has to appear. He's not
13 [inaudible]. He did have an attorney send a letter. That's
14 what he just told me.
15        THE COURT: Thank you.
16        MR. TUNG: And also, Your Honor, if $3.8 million is
17 not sufficient like I said, Your Honor, you can increase, you
18 can put let's say $3 million cash or we'll try to meet the
19 conditions, Your Honor. That's not [inaudible] we're talking
20 about to [inaudible] minor charge [inaudible]. I'm talking
21 about [inaudible] complaint, Your Honor.
22        THE COURT: Thank you everybody. I appreciate
23 everybody's argument and certainly let me respond to your
24 [inaudible], Mr. Tung. Obviously being wealthy is not in and
25 of itself a crime and I don't think anybody is accusing your

1    client of criminal activity merely because of his wealth.  So
2    I want to make sure that that point is made.
3              This is not the first case that I've had where I've
4    had extremely wealthy individuals appear before me who are
5    facing serious charges even if they are not drug cartels or
6    the like as you referenced but where there is serious concern
7    about the person's capacity to flee and in cases where there
8    are -- the defendant has access to significant resources and
9    in this case significant funds and airplanes and numerous
10   passports and citizenship in various countries, some of which
11   may not cooperate with the United States Government if he were
12   to flee and take refuge there.
13             I don't believe I can release your client and be
14   satisfied that he will appear in court.  I don't believe there
15   are conditions that I can set to satisfy myself that he will
16   remain in the United States and face the charges.  So I'm
17   going to order him detained without conditions for his
18   release.
19             When would you like met to set the date for the
20   preliminary hearing?  We can set it for the 14th day which is
21   what he's entitled to or you can waive to the 30th day.  So it
22   would be either October 5th or October 21st.  These are
23   generally not dates where you would appear in court.  They are
24   dates just to hold so we can keep the case moving forward.
25             MR. TUNG: October 5th is a good day.  We'll try to

1  [inaudible] as soon -- as short as possible.
2          THE COURT: Fair enough.
3          MR. TUNG: I have a few on that date [inaudible].
4          THE COURT: So we'll set the preliminary hearing for
5  October 5th.
6          Anything further?
7          MS. ECHENBERG: Yes, Your Honor.  We just wanted to
8  note that we have made consular notification to China and
9  Portugal.  We just wanted to note that on the record.
10         THE COURT: Thank you.  Anything further beyond that?
11         MS. ECHENBERG: No, Your Honor.  Thank you very much.
12         MR. TUNG: October 5th at what time?
13         THE CLERK:  It's just a control date.
14         THE COURT: It's a control date.  So you'll be in
15 touch with the Government and you can talk to them about
16 moving the case forward.  Thank you.
17                          * * * * *

17

1    I certify that the foregoing is a court transcript from
2 an electronic sound recording of the proceedings in the above-
3 entitled matter.

                                    _____
                                    Shari Riemer, CET-805

Dated:  September 28, 2015